**Carlos TREVINO, Plaintiff,**

v.

**The CITY OF ROCK ISLAND POLICE DEPARTMENT, Defendant.**

No. 98–4092.

United States District Court, C.D. Illinois.

Feb. 15, 2000.

Dorothy A. O'Brien, Brad A. Reynolds, Brooke & O'Brien, Davenport, IA, for plaintiff.

Arthur W. Eggers, James S. Zmuda, Califf & Harper, P.C., Moline, IL, for defendant.

## ORDER

MIHM, District Judge.

This matter is now before the Court on Defendant's Motion in Limine to Bar Plaintiff's Expert Witness, which was taken under advisement following oral argument. For the reasons set forth below, the Motion in Limine [# 54] is GRANTED.

## DISCUSSION

 The Court's role in determining the admissibility of expert testimony is that of a gatekeeper. *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In performing this role, the Court must determine whether the expert testimony in question meets two essential requirements: (1) it must be based on scientific, technical, or other specialized knowledge and (2) it must assist the trier of fact in understanding the evidence or determining a fact in issue. *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786; Fed.R.Evid. 702.

In the Americans With Disabilities Act litigation currently pending before the Court, Plaintiff offers Mr. Royce Doane ("Doane") as an expert witness on the issue of whether monocular individuals can generally perform the essential functions of the job of police officer. He would then go on to render the opinion that Plaintiff could in fact perform the job of police officer despite his monocular status. Doane's testimony is based on his 12 years of experience as a monocular visioned police officer with the City of Omaha Police Department.[1] Thus, his testimony is not

---

1. Parenthetically, the Court notes that Doane appears to have been the plaintiff in the only reported case in which a police officer with monocular vision has successfully pursued an ADA claim against his employer. *See Doane v. City of Omaha,* 115 F.3d 624, 628 (8th Cir.1997).

scientific, but rather based on his own experience with the same physical impairment and in the same profession as those involved in this case.

In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court specifically addressed the application of the analysis set forth in *Daubert* to experience-based, non-scientific expert testimony. The Supreme Court held that while a court's gatekeeping function under *Daubert* applies to all expert testimony, in the case of a non-scientific expert, "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho,* 119 S.Ct. at 1175. The inquiry is "a flexible one," and the factors articulated in *Daubert* "do *not* constitute a 'definitive checklist or test.'" *Id.* (emphasis in original). Rather, the inquiry "must be 'tied to the facts' of a particular 'case.'" *Id.* In other words, "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* In fact, the Supreme Court went on to recognize that not all of the *Daubert* factors necessarily apply even in a case where the reliability of scientific testimony is challenged. *Id.* The point is to ensure that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 1176.

■ Here, Doane's background is not seriously in question; he has monocular vision and has performed the position of police officer with the City of Omaha Police Department for 12 years. His opinion stems largely from his years of experience on the job and is supported by the fact that he has apparently been able to perform his job successfully despite his monocular condition. That being said, Doane's personal experience as a monocular police officer does not necessarily mean that he "possesses genuine expertise" on the subject of monocularity in police work. After a careful review of the pleadings and argument submitted in connection with this motion, the Court finds that Defendant has presented a valid question as to whether Doane is qualified to make the conclusions set forth in his expert report, as well as whether the proposed testimony would be helpful to assist the jury in understanding the evidence or determining a fact in issue.

While it is not uncommon for experienced police officers to appear and give expert testimony based on specialized knowledge gained through their years on the job, such testimony is generally derived from the frame of reference that these officers develop as a result of their repeated involvement in the situations forming the basis for their testimony. For example, courts routinely entertain expert testimony from police officers involved in the investigation of drug trafficking on the issue of whether narcotics are accompanied by the indicia of possession for distribution as opposed to personal use. By virtue of the officers' participation in and observations made during the course of numerous drug investigations over time, courts have recognized that these officers are uniquely qualified to describe the various indicators that routinely accompany drugs intended for distribution, such as multiple packages containing small quantities of narcotics, the lack of paraphernalia for personal use, and the presence of a weapon, a paging device, or a large sum of cash. *See United States v. Romero,* 189 F.3d 576, 584 (7th Cir.1999) (acknowledging that expert testimony from experienced law enforcement investigators has proven to be useful to juries in drug trafficking cases.)

Unlike these police experts, who draw from the experience gained through repeated observations in many investigations to arrive at an opinion that a certain situation is sufficiently similar to be analogous, Doane is attempting to do precisely the opposite; instead of using many examples

to arrive at a singular conclusion, he is attempting to rely solely on his own personal experience as a monocular visioned person and generalize it to predict results for other monocular individuals. For instance, a sampling of the opinions set forth in his expert report are as follows:

1. monocular visioned police officers do not suffer from compromised ability and peripheral awareness;

2. monocular visioned police officers do not suffer from compromised orientation mobility;

3. monocular visioned police officers do not suffer from compromised ability to perform pursuit driving;

4. monocular visioned police officers do not suffer from compromised color discrimination and viewing with one eye;

5. monocular visioned police officers do not necessarily suffer from compromised depth perception; and

6. a monocular visioned officer or candidate is not a danger to himself, fellow officers or the public.

The analysis supporting these opinions begins with an explanation of his duties as a police officer and explains that his condition has had no quantifiable impact on his ability to perform the job of police officer. From there, Doane proceeds directly to the conclusion that properly trained officers will respond to these external factors/conditions in a like manner and be similarly unaffected in their performance.

Doane does not base his testimony on an analysis of the residual functional capacities/capabilities of a number of monocular police recruits over time but rather on his own experience as a police officer with monocular vision and having spent a short period of time with Plaintiff. Conspicuously absent is any objective basis or data indicating why it is appropriate to superimpose Doane's abilities and adaptive skills onto other monocular individuals to predict similar degrees of success; he simply states that certain situations have not posed an undue problem for him and extrapolates to the opinion that these same things would not pose a problem for Plaintiff or any other monocular visioned individual pursuing a career in police work.

In rendering these opinions, Doane has no verifiable methodology and has given the Court no indication that he has applied "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 119 S.Ct. at 1176. Essentially, his proposed testimony boils down to the conclusion that because he has been able to perform police work successfully despite his monocular vision, then the Plaintiff will likewise be successful. This is a leap of faith that the Court is unwilling to make, as there is nothing inherent about Doane's own personal experience as a monocular visioned person which logically or scientifically leads to a supportable conclusion that other persons with monocular vision necessarily, or even probably, would have the same abilities that he has.

■ "Judges must look behind an expert's ultimate conclusion and analyze the adequacy of its foundation." *Adams v. Indiana Bell Telephone Co., Inc.,* 2 F.Supp.2d 1077, 1093 (S.D.Ind.1998), *citing Mid–State Fertilizer v. Exchange National Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989). Despite his fervent conclusions, Doane pays little heed to the fact that he and the Plaintiff (or any other monocular individual) do not necessarily have the same skills, abilities or residual capacities and would each be affected differently by the same external factors. He has not formulated his opinions after years of observing individuals with monocular vision in police work or by comparing test results for a sample of monocular visioned recruits with the scores obtained by recruits with sight in both eyes or by any of the other methods that have been implemented by vocational professionals in this type of case.

"An expert must 'substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless.'" *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir.1999); *see also, United States v. Hall*, 165 F.3d 1095, 1101 (7th Cir.1999) (affirming a court's duty to "rule out subjective belief or unsupported speculation.") Here, Doane's ultimate opinions about Plaintiff's qualifications to perform police work amount to nothing more than subjective belief and unsupported conjecture that fail to rise to the level of reliability required under the standard established by *Daubert* and its progeny. Doane concedes that he is not a vocational expert and does not purport to be aware of any scientific or social studies that would confirm his extension of the subjective perceptions that he has developed through his own experiences/encounters in life into the concrete opinion that these conceptual possibilities or suppositions will actually be fulfilled in Plaintiff's case. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Clark*, 192 F.3d at 758, *citing Joiner*, 118 S.Ct. at 519.

The Court further finds that Doane's unsupported conclusions would not be fundamentally helpful or assist the jury in determining a fact in issue. While there may be some merit to dispelling the general perception that monocular visioned individuals are unfit for police work, the proposed testimony goes well beyond this legitimate purpose and would likely mislead the jury by cloaking subjective factual suppositions in the guise of expert testimony. Therefore, the Court cannot conclude that there has been a sufficient demonstration that Doane can reliably determine that Plaintiff, or any other monocular visioned individual, would be qualified to perform the job of police officer, or that such testimony would be relevant in the sense of being helpful to the trier of fact. Accordingly, the proposed expert testimony will not be allowed.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion in Limine to Bar Plaintiff's Expert Witness [# 54] is GRANTED. Plaintiff will have until March 17, 2000, to designate and disclose a new vocational expert, and Defendant will be given until April 17, 2000, in which to depose the newly disclosed expert. Defendant will then have until May 17, 2000, to designate and disclose its expert, and Plaintiff will be given until June 16, 2000, in which to depose Defendant's expert witness. This schedule is not subject to further extension. The final pretrial conference in this matter will be set for Friday, July 21, 2000, at 10:00 a.m. in person in Rock Island.