**KW PLASTICS, et al., Plaintiffs,**

v.

**UNITED STATES CAN CO., Defendant.**

**United States Can Co., Plaintiff,**

v.

**N. Kenneth Campbell, et al., Defendants.**

**Nos. Civ.A. 99–D–286–N, Civ.A. 99–D–878–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 1, 2001.

---

Matt D. Basil, Ross B. Bricker, Andrew A. Jacobson, John F. Ward, Jr. Jenner & Block, Chicago, IL, N.J. Cervera, Grady A. Reeves, Cervera, Ralph & Butts, Troy, AL, for plaintiffs.

Robert E. Battle, Stephen J. Bumgarner, D. Frank Davis, Gerald P. Gillespy, John E. Norris, Burr & Forman, Birmingham, AL, Deborah S. Bussert, Rachel Feldstein, Anthony C. Valiulis, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is KW Plastics' Motion In Limine # 7 To Exclude Expert Testimony Of John McGowan. U.S. Can filed a Response thereto. After these filings, the court ordered that McGowan, who U.S. Can had designated as an expert under the Federal Rules of Evidence, prepare an expert report as required by the Federal Rules of Civil Procedure, and submit to a second deposition at a mutually agreeable date. KW Plastics then renewed its Motion In Limine, and U.S. Can filed a Sur–Reply. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the Motion is due to be granted.

## I. DISCUSSION

■ McGowan is a financial officer at U.S. Can, which brings claims of breach of contract, misappropriation of trade secrets, and tortious interference against KW. McGowan purported to calculate damages to U.S. Can as a result of KW's alleged misdeeds. The party that proffers the testimony bears the burden of showing that it is admissible.[1] *See Bourjaily v. United States*, 483 U.S. 171, 172–73, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir.1999) ("the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable"); *Rudd v. General Motors*

*Corp.*, 127 F.Supp.2d 1330, 1332 (M.D.Ala. 2001). U.S. Can has not met its burden.

■ Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony. The testimony is admissible if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. Put another way, whether testimony is based upon "technical" or "other specialized knowledge," it is admissible if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) his methodology is sufficiently reliable; and (3) the testimony will assist the trier of fact by bringing the expert's knowledge to bear upon a fact in issue. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 2794–97, 125 L.Ed.2d 469 (1993).

■ Thus, the court must determine whether the expert's reasoning and methodology underlying his testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury. *See id.* at 2796; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1174–76, 143 L.Ed.2d 238 (1999); *Rudd*, 127 F.Supp.2d at 1333; *Globetti v. Sandoz Pharm. Corp.*, 111 F.Supp.2d 1174, 1177 n. 8 (N.D.Ala.2000). The inquiry is a flexible one, for while *Daubert* lists several factors for the court to consider, the list neither necessarily nor solely applies to all experts in every case. *See City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 566 n. 25 (11th Cir.1998) (economic and statistical experts); *Rudd*, 127 F.Supp.2d at 1335 ("*Daubert* factors are not, the Supreme Court has emphasized, appropriately used as a definitive checklist, but should instead

---

**1.** In acting as a "gatekeeper," *see* Fed.R.Evid. 104(a), the court is mindful that Rule 702 was intended to liberalize the introduction of relevant evidence. This interest, of course, is balanced against the court's obligation to ex-

clude expert testimony that, by its very nature, has the potential to be both powerful and misleading. *See Allapattah Serv., Inc. v. Exxon Corp.*, 61 F.Supp.2d 1335, 1340 (S.D.Fla.1999).

by understood as non-exclusive, nondispositive considerations that may shape the trial judge's 'flexible inquiry' under Rule 702.")

■ The court's ultimate goal is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 119 S.Ct. at 1176; *Harcros,* 158 F.3d at 566 n. 25.

■ The focus must be "solely" on the expert's "principles and methodology, not on the conclusions that they generate." *Daubert,* 113 S.Ct. at 2797. Yet "conclusions and methodologies are not entirely distinct," given that "[t]rained experts commonly extrapolate from existing data" and "nothing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.; see also Michigan Millers Mut. Ins. Co. v. Benfield,* 140 F.3d 915, 920–21 (11th Cir.1998).

■ The Supreme Court has clearly held that testimony must be "more than belief or unsupported speculation." *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. The advisory committee notes to Rule 702 help clarify the trial court's role in evaluating testimony like McGowan's, which is based "solely or primarily on experience." *See* FED.R.EVID. 702 advisory committee notes. According to the committee:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *The trial court's gatekeeping function requires more than simply taking the expert's word for it.*

*Id.* (emphasis supplied). As Judge Thompson recently stated, "the plain language of new Rule 702, as well as the advisory committee notes to the new Rule, makes it clear that the court is now obliged to screen expert testimony to ensure it stems from, not just a reliable methodology, *but also a sufficient factual basis and reliable application of the methodology to the facts." Rudd,* 127 F.Supp.2d at 1337 (emphasis supplied).

After carefully examining McGowan's report and thoroughly reading more than 400 pages of his deposition testimony, the court finds that McGowan's calculations are speculative, without sufficient factual basis, and methodologically flawed. Furthermore, to any extent that McGowan has used sound economic principles in determining U.S. Can's damages, the court finds that his application of those methods to the particular facts of this case is impermissibly flawed. Thus, KW's Motion In Limine is due to be granted.

## A. *Lost Profits Calculation*

■ The court first turns to McGowan's calculation of lost profits. Key portions of McGowan's testimony are wholly speculative. For example, McGowan's damages claim assumes that U.S. Can lost profits from the production of 22.7 million gallons of paint annually. In its October 2000 interrogatory responses, however, U.S. Can admitted that its plant capacity was only 15.0 million units. Despite this undisputed evidence, McGowan maintained that U.S. Can's capacity, which was "a guess" on his part, was "something in excess of 20 million." (McGowan's Dep. at 342–43.) He testified that U.S. Can could produce 23 to 25 million gallons if it worked its plant around the clock, seven days a week. But McGowan said that on this point, too, "you know, I'm guessing now." (*Id.* at 347.)

Implicitly acknowledging that his "guess" about U.S. Can's actual capacity was erroneous, McGowan opined that U.S. Can would have spent $2.6 million for a new plant and new equipment to boost its

capacity, if not for KW's tortious interference that led to the loss of a valuable customer. McGowan divided the costs between $1 million for a building and $1.6 million for equipment. (McGowan Rep. at 8.) But McGowan's deposition testimony and expert report are at war with each other, thereby leaving the court guessing as to basis of his calculations or its potential error rate.

For example, the new building would either be in California[2] or not.[3] Thus, McGowan either did adjust his estimate for freight costs[4] or he did not.[5] The court has no idea which of these assumptions truly formed the basis of his calculation. Furthermore, McGowan never explained the basis of his opinion that freight costs would be the same, regardless of which facility U.S. Can used for its production and shipment of products. Thus, the court cannot find with any degree of certainty that McGowan applied sound economic principles in a reliable way. *See Rudd,* 127 F.Supp.2d at 1335 (expert testimony should be excluded if it contains internal inconsistencies) (citing *Kumho,* 526 U.S. at 142–46, 119 S.Ct. 1167).

The court's determination is bolstered by the fact that McGowan failed to offer foundation for his calculation of the costs of the new facility and new equipment.[6] The $1 million in building costs was explained as follows:

Q: Where did you get the $1 million number?

A: My experience and knowledge of construction, this would accommodate a building of 30,000 square feet in most every industrial park … unless you are trying to build a manufacturing facility in a high-level residential area, which is not practical.

. . . . .

Q: So you would agree, sir, that as long as that component of cost was within your years of experience, there was no need to have any supporting documentation relating to that particular cost item?

A: Yes.

(McGowan's Dep. at 379–82.) McGowan failed to produce any documents corroborating his conclusion, even though U.S. Can has built facilities in the past and "there are records that would show construction [costs]." McGowan did not produce the documents because he did not bother to consult them. "I didn't have to," he said. "I knew this to be correct." (*Id.* at 381.)

Just as McGowan's estimate of building costs rests upon insufficient facts and data, so does his estimate of equipment costs. McGowan said that the $1.6 million reflected the purchase price of three molding machines. He knew this cost from his "experience dealing with, having bought and indeed selling equipment." (*Id.* at 383.) He never looked at any U.S. Can documents that would corroborate his estimate. He did not solicit any current quotes for any molding machines. (*Id.* at 384.) He said he knew what the prices were because "we've bought molding machines, and I know what the prices were."

2. "The lower freight costs for Santa Ana reflect[] my assumption that U.S. Can would have built a facility near Santa Ana to serve that plant." (McGowan's Rep. at 7.)

3. "No, I did not make that assumption." (McGowan's Dep. at 376.)

4. *See* McGowan Rep. at 7.

5. *See* McGowan's Dep. at 378–79 (McGowan "didn't adjust the freight for Santa Ana based on the location of a facility in Santa Ana"; McGowan "did not incorporate a change in freight costs going from Bakersfield to the customer as opposed to going from Santa Ana to the customer"; McGowan "assumed … that the freight from whatever facility was built in California would be the same freight as being charged from Bakersfield previously.")

6. At one point, McGowan stated that a building would cost somewhere between $28 and $33 per square foot, depending on where it is sited. (McGowan's Dep. at 376.) But neither his deposition nor his report shed any light on the basis of this opinion.

(*Id.*) But he did not know the date when U.S. Can last bought a molding machine, or the precise price of a machine, or the price that U.S. Can paid at any time when it may have bought a machine in the past. (*Id.*)

The court finds that McGowan's testimony differs from that of the expert in *Kumho* in no appreciable way. Therefore, it must be excluded. "The trial court's gatekeeping function requires more than simply taking the expert's word for it." FED.R.EVID. 702 advisory committee notes. Both in *Kumho* and here, rather than answering with specific information a question as to methodology, the experts have impermissibly justified their analysis based upon their subjective beliefs. *See Kumho*, 119 S.Ct. at 1177. *Cf. Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) (court must rule out "subjective belief or unsupported speculation" in determining whether testimony has been subjected to scientific method). McGowan was unable to articulate with any degree of specificity the basis for his cost calculations for buildings or equipment. Nor did he explain how his experience led to his conclusion, or even why his experience is a sufficient basis for the conclusion. "This inability [makes] it next to impossible for the court to ascertain with any degree of confidence the reliability of [McGowan's] method—both in terms of the underlying data and in terms of its application." *Cayuga Indian Nation of N.Y. v. Pataki*, 83 F.Supp.2d 318, 324–25 (N.D.N.Y.2000) (excluding expert's property appraisal that relied partially, but not wholly, upon "an intuitive approach.")

The court is not saying that an in-house employee like McGowan cannot rely upon his own experience. However, McGowan must exercise the same professionalism and thoroughness as any other expert in the field. U.S. Can has not persuaded the court of the dubious proposition that a legitimate damages expert would not have sought or reviewed some type of extrinsic evidence to support his claims, particularly when that information was easily at his disposal. *See Kumho*, 119 S.Ct. at 1176. For this reason, too, the court finds that McGowan's opinion is methodologically unsound and unreliable.

There are numerous other examples in the record pointing to the unreliability of the process by which McGowan reached his conclusions, all of which would lead to the exclusion of his testimony; however, for purposes of brevity, the court will not chronicle those failings here.[7] Quite simply, while the court expresses no opinion on McGowan's credentials, the cumulative effect of his methodological errors renders the lost profits calculation speculative, without foundation, and with an unknown error rate. The court, therefore, finds that the calculation falls outside the range where experts may reasonably differ, and it is due to be excluded. *See, Id.*

In addition, the report fails the relevancy prong of the *Daubert* test, which requires that the evidence fit the facts of the case. *See Daubert*, 113 S.Ct. at 2796. Without sufficient foundation, McGowan's report is connected to existing data only by *ipse dixit*. For reasons previously explained, McGowan's testimony would not be helpful to the jury, which would be left with no basis for evaluating his calculations. *See Joiner*, 118 S.Ct. at 519; *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 460–61 (D.N.J. 1998). Thus, as to lost profits, McGowan's expert opinions have no place in the upcoming trial. *See* FED.R.EVID. 702.

### B. *Unjust Enrichment*

McGowan also intends to testify as to damages allegedly caused by KW's misappropriation of U.S. Can's trade secrets. McGowan has determined that KW was unjustly enriched to the tune of $18.8 million, on the grounds that U.S. Can is entitled to the entirety of U.S. Can's pro-

---

7. The court emphasizes that its focus has always and solely been on the soundness under

*Daubert* of McGowan's methods and not on the conclusions derived therefrom.

jection of the profits KW earned on its sales to Behr. (McGowan Rep. at 8–10.) This testimony, too, is due to be excluded as unreliable and irrelevant.

■■■ Under Illinois law, unjust enrichment damages measure the benefits, profits, or advantages gained by the defendant in its use of a trade secret. *See* Illinois Trade Secrets Act, 765 ILCS 1065/4(a) (1997). In a trade secrets case applying Illinois law, Judge Posner strongly criticized the "simplistic extrapolation and childish arithmetic" inherent in a claim for unjust enrichment when the expert made no attempt to "separate the damages that resulted from the lawful entry of a powerful competitor ... from the damages that resulted from particular forms of misconduct allegedly committed by that competitor." *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415–16 (7th Cir.1992).

In this case, a report like McGowan's, which extrapolates damages for ten years, is reliable and relevant only if the expert has considered whether the particular trade secrets misappropriated caused KW to obtain a *10–year contract for cans, rings, and plugs*, rather than a contract *in and of itself.*[8] *See id.* McGowan, however, has never reflected upon this issue— not even long enough to reject it out of hand. He did not attempt to determine the value of the specific trade secrets used, and he offers no opinion "as to whether KW Plastics' use of U.S. Can trade secrets caused KW Plastics to gain the Behr account." (McGowan's Dep. at 428, 431.) Rather, his projection, like the "childish" projection in *Schiller*, assumes that each and every penny that KW gained constitutes unjust enrichment.

This lack of thought is particularly damning, given that U.S. Can has never entered a contract to sell rings and plugs since at least prior to 1995, and that

McGowan has no knowledge that anybody at Behr ever expressed interest in purchasing rings and plugs at the prices that U.S. Can quoted Behr in 1999. (*Id.* at 435.) Moreover, U.S. Can has admitted that its confidential information and trade secrets are stale at this point in time.

Again, the court stresses that it is not quarreling with McGowan's conclusions. Rather, it is McGowan's *failure to give more than fleeting thought* to numerous matters that are relevant to a report on unjust enrichment that renders his testimony unreliable and irrelevant.[9] *See Garay v. Missouri Pac. R.R. Co.*, 60 F.Supp.2d 1168, 1172–73 (D.Kan.1999) (excluding damages report that failed to consider various crucial pieces of evidence); *see also Clark*, 192 F.3d at 757; *Lithuanian Commerce*, 179 F.R.D. at 459–62. U.S. Can has not met its burden of showing that McGowan's unjust enrichment claim rests upon a sufficient factual basis and reliable application of economic principles to the facts of this case. Accordingly, for these and other reasons, the court finds that McGowan's report with respect to unjust enrichment fails to meet the reliability and relevancy standards required by *Daubert* and its progeny. *See Joiner*, 118 S.Ct. at 519; *Daubert*, 113 S.Ct. at 2797.

■■■ Even if McGowan's unjust enrichment calculations were admissible—which they are not—they are due to be excluded because they constitute an eleventh-hour ambush upon KW. Earlier in this case, the court found that McGowan is considered an "expert" for purposes of the disclosure requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.[10] *See 3M v. Signtech USA, Ltd.*, 177 F.R.D. 459, 461 (D.Minn.1998); *Day v. Consolidated Rail Corp.*, 1996 WL 257654 at *2 (S.D.N.Y.1996). At no point prior to the

---

**8.** One of U.S. Can's own damages rebuttal experts admits that it is inappropriate to fail to tie profits made to the actual misuse of information. (Langenfeld's Dep. at 204–06.)

**9.** The court also notes that this Memorandum Opinion And Order does not detail all of the

methodological flaws in the unjust enrichment section of report, each of which contribute to its inadmissibility.

**10.** *See* Doc. No. 181.

court's order, or in any of McGowan's three earlier reports, or in any of U.S. Can's earlier pleadings, did U.S. Can seek to quantify damages on an unjust enrichment basis.[11] The entire purpose of ordering McGowan to produce a Rule 26 report was to help minimize unfair surprise and prejudice arising from his prior calculation of damages *from lost profits.* To allow McGowan to testify as to *unjust enrichment,* when he has never shown any prior inclination for doing so, would reward U.S. Can for its misdeeds and countenance an end-run around the Federal Rules of Civil Procedure and the orders of the court. Such litigation tactics, which are neither justified nor harmless, cannot stand. Accordingly, McGowan's unjust enrichment calculation is also due to be excluded on this basis.[12] *See* FED.R.CIV.P. 16, 37(b)(2) *Cf. NutraSweet Co. v. X–L Eng'g Co.,* 227 F.3d 776, 785–86 (7th Cir.2000).

## II. ORDER

It is CONSIDERED and ORDERED that KW Plastics' Motion In Limine # 7 To Exclude Expert Testimony Of John McGowan be and the same is hereby GRANTED.

---

11. U.S. Can claims that it could not have quantified these damages until mid-December, when it deposed KW's general manager, Kenneth Campbell. First, this argument is irrelevant, for within the voluminous record (which includes upwards of 6 million Bates-stamped documents) was ample evidence from which one could have assembled an estimate with reasonable certainty. Second, U.S. Can conveniently overlooks the fact that it previously took a pass on deposing Campbell last fall.

12. In reaching this conclusion, the court has carefully considered and weighed such factors as: (1) U.S. Can's reasons for failing to provide the information sooner; (2) the importance of the information; (3) KW's need for time and KW's ability to respond to the proffered evidence; and (4) the court's ability to alleviate unfair prejudice through alternative measures. The court finds that no other measures would be equally effective but less draconian.