In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3981

DARLA J. BOURELLE and RHONDA WENDLING,

Plaintiffs-Appellants,

v.

CROWN EQUIPMENT CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
Nos. 95 C 2065 and 95 C 2256--Harold A. Baker, Judge.

Argued May 30, 2000--Decided July 17, 2000

Before POSNER, Chief Judge, COFFEY and KANNE,
Circuit Judges.

COFFEY, Circuit Judge.  After Rhonda Wendling and
Darla Bourelle were injured in the course of
their employment at Sears Logistical Systems
(SLS) in Manteno, Illinois, they both filed
product liability and tort actions in the
Illinois state court system. In their complaints,
the two women alleged that the Crown Turret
Stockpicker (TSP)/1 that they were operating,
and which was manufactured and placed in the
stream of commerce by Crown Equipment
Corporation, was improperly designed. They also
alleged that Crown was negligent in its
maintenance of the TSP, as well as the
operational warnings it provided for the
forklift. Based on the diversity of the parties,
Crown removed the two cases to the United States
Federal Court for the Central District of
Illinois. After the trial judge ruled that the
plaintiffs' expert witness, Daniel Pacheco, was
"unreliable" within the meaning of Fed. R. Evid.
702,/2 he granted summary judgment to Crown on
the plaintiffs' product liability claim./3 We
affirm./4
I.  BACKGROUND
A.  The Accidents

Because this case turns on the reliability of
the plaintiffs' expert witness and not on the
nature nor the cause of their injuries, we need

not undertake a long discussion dealing with the facts of the plaintiffs' respective accidents. Suffice it to say, Wendling was transporting empty pallets which were stacked on the forks of the TSP directly in front of the operator's compartment. As the TSP was traveling along the wire system down a narrow warehouse aisle, a pallet became dislodged, hit the side of the aisle, entered the operator's compartment, and violently struck Wendling in her abdomen. Bourelle was injured while operating the same TSP that was involved in Wendling's accident; she was also transporting empty pallets down a narrow warehouse aisle when a pallet entered the operator's compartment and struck her left knee, necessitating surgery.

B.  The Expert

  The plaintiffs' proposed expert, Daniel Pacheco, is a mechanical engineer with experience investigating lift truck accidents. He received his B.S. degree in mechanical engineering from the University of Massachusetts in 1964, and his M.S. degree in management from the Graduate School of Management in Lake Forest, Illinois, in 1974. Additionally, Pacheco has been a registered Professional Engineer in Illinois since 1970, and was employed for seventeen years as an engineer for Fiat-Allis Construction Machinery Inc. of Deerfield, Illinois, and Pettibone Corporation of Chicago, Illinois, working on the product design and the development of heavy vehicles and forklift trucks. In 1982, Pacheco became a senior engineering consultant for Polytechnic, Inc. of Lincolnwood, Illinois. In 1989, Pacheco became president of Polytechnic, Inc., and now specializes in the safety analysis of construction and industrial equipment./5

  Wishing to use Pacheco's expertise in their suit, Wendling and Bourelle retained Pacheco, in November 1998, as an expert witness to perform an engineering investigation, and prepare a report, concerning their two accidents./6 The trial judge described Pacheco's investigation as consisting of:

reading the depositions of the plaintiffs and ten other people who had knowledge relevant to the occurrences that are the subject of the suit. Mr. Pacheco also reviewed Crown Equipment Corporation manufacturing and service documents for the TSP, Crown sales brochures, a training manual and engineering drawings for the TSP.

On the basis of this investigation, Pacheco opined that the TSP was defective both because it was designed with inadequate guarding and because it lacked an adequate warning regarding the risk

of pallets becoming dislodged and entering the operator's compartment./7

Specifically, Pacheco stated that the wire mesh guarding, covering the area between the lower bar and the bottom of the operator's compartment, could be (and should have been) extended up to the mid-bar, and that such guarding would have prevented Bourelle's injury. Pacheco also opined that the "same type of structure as utilized in the overhead guard could be placed in front of the operator's compartment on top of the midrail," and that such guarding would have prevented Wendling's injury. In short, Pacheco would, as Wendling and Bourelle explain in their brief, "extend the already existing guarding."

The district court found that although Pacheco was qualified to testify as an expert witness, his testimony was unreliable under Fed. R. Evid. 702 because

[h]is opinion as to guarding has not been tested nor has any attempt been made to prove its feasibility. He did not prepare engineering drawings of his proposed design and undertook no study of strength of materials necessary to create the guards he proposes. His knowledge and experience with TSP's is limited to his examination of photographs and manufacturer's literature. He has never seen one in operation in the narrow warehouse aisles for which the TSP was designed. The court can only conclude that Mr. Pacheco's opinions about an unreasonably dangerous condition in the TSP fall into the category of subjective belief or unsupported speculation.

The same can be said concerning his opinion about the absence of a warning about colliding with obstructions in the aisle and injury from intrusion. . . . He has not designed a warning for the TSP operator that would seek to ameliorate the unsafe condition he believes exists. It's just his opinion that common sense would say that a warning would be appropriate.

The district court, after concluding that Pacheco's opinions were not supported by sufficient scientific evidence (that is, Pacheco's lack of familiarity with both the product in question and the setting in which it was used), granted summary judgment in favor of Crown on the product liability count.

II. ISSUES

On appeal, Wendling and Bourelle contend that the trial judge abused his discretion in excluding Pacheco's expert testimony regarding

the allegedly defective design and labeling of
Crown's TSP.

III.  ANALYSIS
A.  Standard of Review

   As the Supreme Court has stated repeatedly, we
review the district judge's decision whether to
admit or exclude expert testimony for an abuse of
discretion. See Kumho Tire Co. v. Carmichael, 526
U.S. 137, 119 S. Ct. 1167, 1176, 143 L. Ed.2d 238
(1999); see also General Electric Co. v. Joiner,
522 U.S. 136, 118 S. Ct. 512, 515, 139 L. Ed.2d
508 (1997). We are obligated to take cognisance
of the fact that deference to the trial court's
decision is the "hallmark" of abuse of discretion
review.

Clark v. Takata Corp., 192 F.3d 750, 756 (7th
Cir. 1999); see also Smith v. Ford Motor Co., No.
99-2656, 2000 WL 709895, at *2 (7th Cir. June 2,
2000). Furthermore, "[o]ur cases have recognized
the importance of testing in alternative design
cases," Cummins v. Lyle Industries, 93 F.3d 362,
368 (7th Cir. 1996), and "[t]he trial judge must
have considerable leeway in deciding in a
particular case how to go about determining
whether particular expert testimony is reliable."
Kumho Tire Co., 526 U.S. at 152; see also Ancho
v. Pentek Corp., 157 F.3d 512, 515 (7th Cir.
1998) ("It is well established that issues
related to expert opinion testimony are matters
of law to be determined by the trial judge."
(citations and internal quotations omitted)).

B.  The Reliability of Expert Testimony
   In the recent and well-recognized Daubert v.
Merrell Dow Pharmaceuticals Inc., 509 U.S. 579,
589 (1993), the Supreme Court held that Fed. R.
Evid. 702 imposes on the trial court the
obligation, when dealing with expert witnesses,
to ensure that scientific testimony is "not only
relevant but reliable."/8 In Kumho, the Supreme
Court clarified its decision in Daubert and held
that "this basic gatekeeping obligation" applies
to all expert testimony. 526 U.S. at 147. Thus,
the trial judge must determine whether Pacheco's
opinion was grounded in the "methods and
procedures of science," Daubert, 509 U.S. at 590,
and whether such testimony had sufficient
"factual underpinnings," Walker v. Soo Line R.R.
Co., 208 F.3d 581, 586 (7th Cir. 2000).

   Furthermore, as the Supreme Court elaborated:

The objective of [Daubert's gatekeeping]
requirement is to ensure the reliability and
relevancy of expert testimony. It is to make
certain that an expert, whether basing testimony
upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. Kumho, 526 U.S. at 152. Also, "[i]t is axiomatic that proffered expert testimony must be 'derived by the scientific method[.]'" Clark, 192 F.3d at 756 (citations and internal quotations omitted).

In this case, the plaintiffs' expert surmised and claimed that an alternative design should have been implemented for the TSP, and if it had, neither of the plaintiffs would have been injured. However, when questioned by Crown's counsel, Pacheco admitted that he had not done any scientific testing to support his alternative design theory. In his deposition, Pacheco stated:

Q. Have you done any type of engineering testing to verify if your alternative design that you just described for us would eliminate the hazards that you claim exist?

A. I haven't done any testing, no. . . .

Q. Have you attempted to replicate the application of the TSP with this alternative design that you advocate? Have you done any studies to show that you could perform these applications with a barrier guard in front as you just described?

A. I haven't done any studies./9

Also in his deposition, Pacheco admitted that he has not prepared "detailed design or calculations," performed "an economic feasibility study," prepared "preliminary design drawings," or performed "any risk utility type testing." The district judge stated that without such work or testing, "[t]he court can only conclude that Mr. Pacheco's opinions about an unreasonably dangerous condition in the TSP fall into the category of subjective belief or unsupported speculation."/10 Cf. Clark, 192 F.3d at 759 ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact." (citing Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 318-19 (7th Cir. 1996))).

On appeal, Wendling and Bourelle contend that the district judge "failed to be flexible" in determining the reliability of Pacheco's opinion. They argue that "[a]lthough Pacheco may not have satisfied the specific factors delineated in Daubert, he did meet enough reliability factors to render his opinion admissible." That is, although Wendling and Bourelle concede that Pacheco has failed to perform any studies or testing of his proposed design and further acknowledge that their proposed expert never

observed the TSP forklift in question (much less saw a loaded TSP operate in the narrow aisles of a warehouse), they contend that "[t]he necessity for testing is diminished" because "Pacheco is relying on the testing already performed by Crown."/11

However, the appellants ignore the fact that Pacheco never: 1) saw or inspected the vehicle itself (only pictures and videotape); 2) never observed the vehicle loaded and operating within the narrow confines of the warehouse; 3) prepared any drawings in relation to his alternative design theory; 4) conducted any computer analysis; 5) submitted his alternative design theories to the American National Standards Institute (ANSI), despite the fact that he was aware of the organization; nor 6) had any recognized scientific approval of his alternative design theories. Furthermore, as the appellants admit, Pacheco did not satisfy the specific factors delineated in Daubert. And, although courts should be flexible in their application of Daubert, there is no requirement that judges apply only those criteria that the plaintiffs believe are important. See Ancho, 157 F.3d at 515./12

In this case, the trial judge focused on the lack of testing performed by the plaintiffs' expert and concluded that without such testing, Pacheco's opinions were nothing more than speculation and were thus unreliable. Recognizing that "[t]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," Kumho Tire Co., 526 U.S. at 152, and that testing is important in alternative design cases such as this, see Cummins, 93 F.3d at 368, we are of the opinion that the judge did not abuse his discretion in excluding Pacheco's testimony as unreliable. This conclusion is bolstered by the fact that Pacheco's opinion is also unreliable under the other factors delineated in Daubert: no lab or organization has tested his theories; no other manufacturer incorporates his proposed design; and he has not seen any industry studies regarding accident experience with the TSP. See generally General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

C. Pacheco's Expert Opinion Regarding a Warning for the TSP

As stated above, Pacheco also opined that the warning labels on the TSP were inadequate because they failed to provide an adequate warning regarding the risk of pallets becoming dislodged and entering the operator's compartment./13 Specifically, in his December 1, 1998 report, Pacheco stated that this warning was inadequate and that "Crown failed to adequately warn of the hazards and warn of necessary operational steps to be taken which would enable users to avoid the hazard."

The same reliability requirements that apply to alternative design apply to alternative warnings. See Cummins, 93 F.3d at 367. Just as Pacheco failed to test his proposed guarding requirements, Pacheco also failed to test (or even to draft) an alternative warning for the TSP. At his deposition, Pacheco testified:

A. I think there needs to be a specific warning to the operator about this particular hazard.

Q. The hazard of pallets possibly entering the compartment?

A. Yes.

Q. And what kind of warning would you provide to so satisfy your belief one ought to be provided?

A. You mean the language of a warning?

Q. Yes, yes.

A. I haven't created the language for a warning, so I would have to do that.

Q. So you haven't done that task?

A. That's right.

* * *

A. You're not going to get the answer because I told you I have not drafted a warning. But that is the subject of the warning, is [sic] the hazard.

Q. You can't, as you're sitting here today, give me the gist of the warning, the language that you would employ?

A. Correct.

Thus, like his proposed design, Pacheco's failure to even draft a proposed alternative warning for the TSP's operation manual renders his opinion regarding the alleged inadequacy of Crown's

existing warning concerning the risk of pallets entering the TSP operator's compartment to be unreliable. See, e.g., Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1084 (8th Cir. 1999) (Excluding expert testimony that "warnings were deficient in placement, design, orientation, and content" as unreliable because "[n]either [expert] had created or even designed a warning device which would have been more appropriate, much less tested its effectiveness.").

  The district judge's decision to prevent [Pacheco] from testifying, far from being an abuse of discretion, see General Electric Co. v. Joiner, 522 U.S. 136 (1997), was absolutely correct. Many times we have emphasized that experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff-- deploying neither data nor analysis--is not acceptable methodology. See, e.g., McMahon v. Bunn-O-Matic Corp., 150 F.3d 651, 657-58 (7th Cir. 1998); Mid-State Fertilizer Co. v. Exchange National Bank, 877 F.2d 1333, 1339 (7th Cir. 1989).

Lang v. Kohl's Food Stores, Inc., No. 99-3377, 2000 WL 804608, at *2 (7th Cir. June 22, 2000). The fact that Pacheco never even drafted a proposed warning renders his opinion akin to "talking off the cuff" and not acceptable methodology. Accordingly, we conclude that the district judge did not abuse his discretion in excluding, as unreliable, Pacheco's opinion regarding a warning for the TSP.
The decision of the district court is

AFFIRMED.


/1 According to the district court,

[a] TSP is a forklift truck designed to move full pallets in and out of warehouse racks and also for order picking partial loads. The turret on the TSP allows the operator to work either side of a narrow warehouse aisle without turning the truck around. The TSPs in this case were operated in the warehouse aisle on an electronic wire guidance system. The operator controls the speed and direction of the TSP's movement but not the steering. That is controlled by the wire. The TSP is a "man-up" forklift, i.e. the operator's cab elevates so that she is in close proximity to the work being performed.

/2 Fed. R. Evid. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

/3 Rather than proceed with their negligence claim in the district court, Wendling and Bourelle voluntarily dismissed the negligence count without prejudice, and filed a notice of appeal from the district court's order granting summary judgment for Crown on the product liability count. In an order dated November 24, 1999, this court expressed concern that the parties' stipulation to dismiss the negligence count without prejudice "manufactured a final judgment" and did not make the district court's summary judgment order final and appealable within the meaning of 28 U.S.C. sec. 1291. Subsequently, the parties stipulated to dismiss the negligence count with prejudice, and this appeal was allowed to proceed.

/4 We note that this court recently decided another case involving Crown and Pacheco, see Weir v. Crown Equipment Corp., No. 99-1100, 2000 WL 769244 (7th Cir. June 15, 2000), however these cases were not consolidated because they involved different types of forklifts and arose in different states.

/5 In 1993, Pacheco co-authored a paper, Risk Analysis of Forklift Drivers.

/6 At oral argument counsel for Wendling and Bourelle explained that a previously retained expert became ill, and that Pacheco was a last minute substitute.

/7 Pacheco stated his opinion on three separate occasions: 1) in an engineering investigation report dated December 1, 1998; 2) in his deposition taken January 7, 1999; and 3) in an affidavit dated September 24, 1999.

/8 Daubert set forth the familiar nonexhaustive list of four factors that are helpful in gauging the reliability of expert testimony: 1) whether the theory is scientific knowledge that will assist the trier of fact and can be tested; 2) whether the theory has been subjected to peer review or publication; 3) the known or potential rate of error and the existence of standards controlling the technique's operation; and 4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community. See Daubert, 509 U.S. at 593-94. However,

[b]ecause the Daubert Court "emphasized that it

did 'not presume to set out a definitive checklist or test,' and that the district judge's inquiry should be 'flexible,'" United States v. Vitek Supply Corp., 144 F.3d 476, 485 (7th Cir. 1998) (citation omitted), there is no requirement that the district judge consider each one of these "guideposts" when making an admissibility ruling under Fed. R. Evid. 702.

Ancho, 157 F.3d at 515.

/9 In his December 1, 1998 report, Pacheco recognized that "[i]n the stockpiling operation, the standing operator has a need to access racks outside the periphery of the truck and place loads onto the pallets in front of the operator's compartment without interference by fixed barrier guards between the compartment and the forks." (Emphasis added).

/10 The judge did not impose testing as an absolute requirement. Pacheco's opinion is not reliable on any of the other Daubert factors. In his deposition, Pacheco admitted: that no lab or organization has tested his theories, that no other manufacturer incorporates his proposed design, and that he has not reviewed any industry studies regarding accident experience with the TSP.

/11 Wendling and Bourelle also contend that Pacheco's experience "is an important factor in determining the reliability of his opinions regarding the necessity of guarding on the TSP . . . [and] the District Court should have given it more weight." But this argument is misconceived because it fails to take into account the fact that this court treats the reliability of an expert's opinion in a particular case separately from his or her overall qualifications. See Clark, 192 F.3d at 759 n.5 (7th Cir. 1999) ("[Q]ualifications alone do not suffice. A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are reliable and relevant under the test set forth by the Supreme Court in Daubert."); Kirstein v. Parks Corp., 159 F.3d 1065, 1067 (7th Cir. 1998) ("It is true that Dr. Nelson has impressive credentials. . . . But the fact is that he did no testing on these products . . . . And we have sanctioned the exclusion of speculation offered by persons with credentials as impressive as those of Dr. Nelson."); Minasian v. Standard Chartered Bank PLC, 109 F.3d 1212, 1216 (7th Cir. 1997) (Warning that "judges not be deceived by the assertions of experts who offer credentials rather than analysis.").

/12 As we stated in Clark, 192 F.3d at 759,

[g]iven the state of the record, including the absence of any stated methodology, it is difficult for this Court to evaluate the scientific technique used by Dr. Lafferty in formulating his opinions. Thus, we sympathize with the trial judge's inability "to determine [if the] methods are consistent with the generally accepted method for gathering and evaluating evidence in the field of biomechanics and mechanical engineering as applied to occupant dynamics and restraint system efficacy in motor vehicle accidents." Dr. Lafferty's second opinion, that a properly functioning lap belt would have prevented Clark from moving upward four inches and striking the roof of the vehicle, lacked reliance on any 'stated methodology' or the scientific method.

See also Ancho, 157 F.3d at 517 ("There is nothing in the record that would cause us to believe that Lobodzinski presented any architectural designs or materials to illustrate his proposals. Furthermore, as previously stated, the judge pointed out that Lobodzinski had failed to observe the transfer car in operation, much less visit the accident scene, nor had Lobodzinski ever observed any similar conveyor system.").

/13 The TSP operator's manual, which both Wendling and Bourelle admitted reading while training to operate the TSP, states: "All clearances must be checked before traveling due to various load lengths, widths, and/or misalignment which will affect load clearance."