Dale **FREY** and Bruce Frey, Plaintiffs,

v.

**CHICAGO CONSERVATION CENTER, Defendant.**

Chicago Conservation Center, Counterplaintiff,

v.

Dale Frey, Bruce Frey, and Patrick B. King, Counterdefendants.

No. 98 C 6434.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 23, 2000.

Michael J. Rovell, Chicago, IL, for Plaintiff.

Jerome H. Torshen, Zoran Dragutinovich, Torshen, Spreyer, Garmisa & Slobig, Ltd., Chicago, IL, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is a motion *in limine* by the defendant/counterplaintiff, Chicago Conservation Center, to exclude the opinion testimony of Patrick B. King. For the reasons set forth below, the motion is granted in part, denied in part.

### I. BACKGROUND

Plaintiffs/counterdefendants, Bruce and Dale Frey ("plaintiffs" or "Freys") have filed suit against defendant/counterplaintiff, the Chicago Conservation Center ("defendant" or "CCC"), alleging that CCC damaged pieces of the Freys' art collection. Specifically, the plaintiffs allege that CCC exposed certain works to ozone which caused a fading to the color properties of the art works, and they seek compensation for the resulting loss of the works' value. To support their claim, plaintiffs offer the testimony of Mr. Patrick B. King ("King"), an art appraiser and conservator familiar with the use of ozone on works of art. In response, CCC moves this court to exclude King's testimony, arguing that he is unqualified to offer expert testimony.

On July 8 and 9, 1998, following a fire at their home, the Freys arranged to have pieces of their art collection moved to the CCC. (*Defendant's Reply*, Ex. A). Two

weeks later, on July 22, 1998, the pieces were transported from CCC to Pickens–Kane Moving & Storage Company ("Pickens–Kane"). (*Defendant's Motion* ("*Def.Mot.*"), Ex. A, at 51). Meanwhile, the Freys hired King to consult them in connection with the restoration of their art. (*Deposition of Patrick B. King* ("*King Dep.*"), at 30).

Mr. King operates two companies, Midwest Freeze–Dry and Patrick King & Associates. (*Id.*, at 4–5). Patrick King & Associates primarily performs art appraisals, while Midwest Freeze–Dry performs art conservation and restoration services. (*Id.*, at 5–7). One of the conservation methods with which King is familiar is the exposure of art to ozone. For 13 years, both companies used ozone "for destroying hydrocarbons [and] smoke odors" on pieces of art, ceasing the practice three years ago. (*Id.*, at 16, 90).

On two occasions prior to the fire, King allegedly had observed the Freys' art collection in connection with unrelated insurance claims filed by the Freys. (*Id.*, at 30–35). In July of 1994, King was asked by Chubb Insurance to examine some of the Freys' Oriental rugs, and in January of 1998, King was asked by CNA Insurance to examine one of the Freys' paintings. (*Id.*). At both times, King took an informal tour of the Frey house, observing the art collection throughout. (*Id.*)

On September 9th, 1998, King examined the art works being held at Pickens–Kane. (*Id.*, at 44–45). In his deposition, he testified that the "character of the artwork was altered . . . It was different in appearance and smell . . . The color appeared faded . . . It had a bleachy odor to it." (Id., at 48–49). On April 13, 1999, and again in June or July of 1999, King conducted two subsequent examinations of the Freys' art collection that included photographing the art work under 500 watt color corrected photo flood lamps. (*Id.*, at 65–66). Following these examinations, King submitted reports to the Freys dated April 16, 1999 and July 23, 1999. (*See Def. Mot.*, Ex.'s C, D). In the first report, King wrote that he "detected the smell of decaying ozone emanating" from the art work, and that he was "extremely familiar with the smell of ozone and [could] easily identify it." (*Def. Mot.*, Ex. C, at 3). King concluded that "the optical properties of Mr. Frey's artwork have been altered" and that "the values of the objects of art have been diminished by 65%." (*Id.*) In his second report, King reiterated his belief that these "items have been exposed to Ozone." (*Def. Mot.*, Ex. D). During his deposition, King was asked what he meant in his reports by "decaying ozone." He replied that it was "the reaction between the ozone and the material," and that it had an "odor all of its own as it reacts with the material." (*King Dep.*, at 17). He was then asked: "So it's different from an ozone odor, or is it the same?" And King replied, "[i]t's the same." (*Id.*) Plaintiffs intend to rely on King's testimony to bolster their claim against CCC.

Defendant now argues that King should not be allowed to offer this court expert testimony, because his methodology does not meet the standards established by federal law to evaluate expert testimony. Specifically, they argue that the physical properties of ozone make it impossible for King to have smelled it six weeks after the alleged exposure. In addition, they question King's ability to discern fading in the color of the works, especially based on the casual manner of his previous observation. CCC goes on to emphasize the lack of education King has in chemistry and related fields.

The Freys respond that King is qualified to testify as an expert. His lack of education is overcome, they assert, by his extensive experience with the treatment of art with ozone. In the alternative, plaintiffs contend that King should be allowed to testify as a lay witness pursuant to Federal Rule of Evidence 701.

## II. *ANALYSIS*

■ When resolving a motion to exclude, federal courts must evaluate each

proffered opinion individually against the standards of the federal rules of evidence, rather than evaluate a witness's testimony in aggregate. As a result, it is not uncommon for a witness to be allowed (or disallowed) to offer one opinion as an "expert" and another as a lay witness. *See, e.g., United States v. Figueroa–Lopez*, 125 F.3d 1241 (9th Cir.), *cert. denied*, 523 U.S. 1131, 118 S.Ct. 1823, 140 L.Ed.2d 959 (1998). For example, in this case, we find that none of Mr. King's opinions meet the requirements of Federal Rule of Evidence 702. Therefore, Mr. King may not testify as an expert. However, we also find that some of Mr. King's opinions satisfy the requirements of FRE 701, and thus, Mr. King may testify in a limited capacity as a lay witness.

### A. *Expert Testimony—FRE 702*

Use of expert testimony in federal court is governed by Federal Rule of Evidence 702, which reads:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise.

█ In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court established the now-familiar, two-part inquiry for assessing proffered testimony under Rule 702. To admit such testimony, this court must find that the "expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592, 113 S.Ct. 2786. The first prong tests the reliability of the testimony; the second prong tests its relevance. Courts must apply this framework to all proffered expert testimony, be it scientific, technical or specialized in nature. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1170 143 L.Ed.2d 238 (1999). Furthermore, the proponent of the testimony

bears the burden of proving that their proffered testimony meets these requirements. *SEC v. Lipson*, 46 F.Supp.2d 758, 762 (N.D.Ill.1998). Given this standard, we find that the plaintiffs have not met their burden. While King's testimony is certainly relevant, his methodology is not sufficiently sound and must be excluded.

Regarding relevance, King's testimony that the art works he examined had been exposed to ozone addresses the central matter of contention here. Being "pertinent to an issue in the case," it would be relevant. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir.2000). However, this court must go beyond simple relevance and make certain that Mr. King "employs in the courtroom the same intellectual rigor that characterizes the practice of an expert in [his] field." *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167.

█ Turning to the reliability inquiry, we are again guided by the Supreme Court. In *Daubert*, the Court provided trial courts weighing reliability with four factors that might prove helpful: (1) whether the expert's technique or theory has been tested; (2) whether it has been subjected to peer review; (3) its known or potential error rate; and (4) whether it enjoys general acceptance within the relevant community. 509 U.S. at 593–94, 113 S.Ct. 2786. Despite the specificity of this list, the Court cautioned that the "inquiry envisioned by Rule 702 is, we emphasize, a flexible one." *Id.* at 594, 113 S.Ct. 2786. And since then, the Court has reiterated that "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts in every case." *Kumho*, 526 U.S. at 141, 119 S.Ct. 1167. In this case, the subjective nature of King's proffered testimony nullifies the applicability of most of the Daubert factors. Peer review, error rate calculation, and testability are not germane to King's individual ability to smell ozone, to notice color difference, or to extrapolate regarding the use of ozone. This is not fatal to his qualification, but it certainly weighs against plaintiffs in that it

leaves this court with less bases upon which to judge his methodology.

By contrast, we do find the fourth Daubert factor potentially applicable to this situation. It would not have been impossible for plaintiff to demonstrate the general acceptance of King's methods. Would other conservators or appraisers find it acceptable for a conclusion, any conclusion, regarding ozone usage to have been drawn by King in this situation? For this question the court has no answer. Plaintiff has presented no evidence to show that King's processes would be considered by those in his industry to yield reliable results. There are allusions in King's report to articles on the treatment of art with ozone, but none of these or any other articles or trade literature is before the court. Moreover, plaintiffs attach to their surreply an e-mail from a distraught person, frustrated by her inability to remove the odor of ozone from her house. In its form, this purely anecdotal evidence is hearsay, but it is indicative of the type of evidence absent from plaintiffs' attempt to qualify their expert. Plaintiffs are correct when they contend that King's experience with ozone and art could overcome his lack of formal education in the fields of general chemistry. But, if they seek to rely on his experience, then they must show that this type of conclusion is acceptable based on that experience.[1] They have not done so.

Furthermore, there are a number of measures that could have been taken by Mr. King to bolster the reliability of his methodology and lift it from its mire of subjectivity. For instance, he could have undertaken to objectively confirm his conclusions by testing for ozone usage in some other way. Where an expert's analysis seems unnecessarily incomplete or inadequate, the Seventh Circuit has upheld its exclusion. See *Bourelle v. Crown Equipment Corp.*, 220 F.3d 532 (7th Cir.2000); *Ancho v. Pentek Corp.*, 157 F.3d 512 (7th Cir.1998). In *Bourelle*, the plaintiff offered an expert to testify that an alternative design for a forklift truck should have been implemented and that the alternative design would have prevented plaintiffs' injuries. 220 F.3d at 535. The trial court found the opinions unreliable, and the Seventh Circuit affirmed, in part, because the expert had failed to observe the forklift in question or to perform any testing or analysis of his alternative design. *Id.* at 538. Similarly, in this case, King failed to perform any formal testing for the presence of ozone, something one of defendant's witnesses claimed was quite feasible. (*Def. Mot.*, Ex. E, at 4). King did testify that he used a "XRITE 528 Spectro Densitometer" to measure color saturation of some of the art works in question on April 13, and the remainder in June or July, 1999, presumably, to confirm the alleged fading. (*King Dep.*, at 66–68). But he had no prior formal readings against which to compare his new saturation readings; and apparently, he did not even get a full set of readings. He testified that he stopped measuring at some point because he could "see the difference. You don't have to measure it." (*Id.*, at 68).

In sum, King's methodology (I smelled it, I saw it—therefore it is) is simply too subjective, unsupported, and speculative to be considered reliable for purposed of Federal Rule of Evidence 702. Without the support for King's processes mentioned above, this court is left with a witness whose method for arriving at his proffered conclusion is called impossible by the defendant, but so individual in its nature that plaintiffs seems unable or unwilling to validate its reliability. Simply put, we see a decided absence of any scientific validity to the conclusions reached by Mr. King, and thus they may not come into evidence under Fed.R.Evid. 702. Therefore, Mr. King may not opine in this case regarding

---

1. In *Kumho,* the Supreme Court contemplated the use of such an expert. The court stated:

    "it will at times be useful to ask even a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable." 528 U.S. at 151, 120 S.Ct. 666.

alleged ozone use by the defendant, color fading due to ozone use, or the loss in value caused by such use. He may not draw conclusions based on his observations to the extent those conclusions extend beyond any topics with which he has first hand knowledge.

## B. *Lay Witness Testimony—FRE 701*

In the alternative, plaintiffs argues that King's testimony may be admissible as the opinion testimony of a lay witness. Defendant declined to address this possibility. To a limited extent, we agree with the plaintiffs.

Federal Rule of Evidence 701 provides: If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Under this rule, any and all witnesses are allowed to testify to relevant inferences, "but the inferences must be tethered to perception, to what the witnesses saw or heard." *U.S. v. Santos*, 201 F.3d 953, 963 (7th Cir.2000). According to an advisory comment to Rule 701, the requirement that the opinion be based on the witness's perception is "the familiar requirement of first-hand knowledge or observation." Fed.R.Evid. 701 advisory committee's note. Therefore, this court will allow any opinion of King that is relevant and based on his first-hand knowledge.

As explained above, this court finds all of King's opinions to be relevant to the instant case since they directly pertain to

one of the central issues. Thus, this court proceeds to examine each of his opinions to determine whether it is based on his first-hand knowledge and observation. We conclude that two of King's opinions should be allowed as lay opinions. First, based on his personal experience with the art works in question, King may testify as to perceiving the works as having faded. Second, based on his past exposure to the distinctive smell of ozone, King may testify that he smelled ozone while examining these works. Furthermore, he may explain how he has become acquainted with the smell of ozone. Still, as stated above, he may not testify about any conclusions he has drawn about whether or not the Frey art works had been exposed to ozone or whether ozone caused any fading to them, or that CCC had anything to do with either, because such testimony would exceed the boundaries of his personal knowledge.

In numerous cases, courts in the Seventh Circuit have allowed the admission of lay opinions pertaining to what could arguably be called specialized[2] knowledge. *See, e.g., U.S. v. Estrada*, 39 F.3d 772 (7th Cir.1994)(per curiam); *U.S. v. Sweeney*, 688 F.2d 1131 (7th Cir.1982); *Thermodyne Food Service Products, Inc. v. McDonald's Corp.*, 940 F.Supp. 1300 (N.D.Ill. 1996). For instance, in *Sweeney*, the trial court allowed a witness to introduce a lay opinion that the substances manufactured by the defendant were PCP and methamphetamine. 688 F.2d at 1145. This opinion was based on the fact that the witness had previously used these drugs and when he sampled the substances in the defendant's possession, he experienced the same physical effects. *Id.* The Seventh Circuit affirmed. *Id.* at 1146. Also, in

---

2. This court is well aware that an amendment to Federal Rule of Evidence 701 is scheduled to take effect December 1, 2000. The rule, as amended would read as follows:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the

witness' testimony or the determination of a fact in issue, *and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.* (emphasis added).

We offer no opinion here as to whether the rule, as amended, would change the disposition of this motion. We are, of course, bound by the current state of law, as reflected in Seventh Circuit case law.

*Thermodyne,* the trial court allowed two employees of a company to give their lay opinion that the technology of the company was not widely known in the industry. 940 F.Supp. at 1306. Similarly, King's personal knowledge coupled with his perception of color and odor when examining the Frey's art entitles him to express limited lay opinions.

To the extent CCC disputes King's ability to have perceived either a change in the color of some of the works or the odor of ozone, they raise questions of his credibility, not his qualification as a lay witness, and matters of credibility are left to the jury. As the Seventh Circuit has noted, "Rule 701 places great reliance on a party's ability to cross-examine an opponent's witness and present any weaknesses in the witness's testimony to the trier of fact." *U.S. v. Allen,* 10 F.3d 405, 414 (7th Cir. 1993).

### III. *CONCLUSION*

For the foregoing reasons, defendant's MOTION *IN LIMINE* TO EXCLUDE THE OPINION TESTIMONY OF PATRICK B. KING is GRANTED in part, DENIED in part, as set forth in the body of this order.