St. Laurent v. Metso Minerals, et al. CV-04-014-SM  09/13/05  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


St. Laurent et al.


   v.                                       Civil No. 04-cv-14-SM
                                              Opinion No. 2005 DNH 130
Metso Minerals Industries,
Inc., et al.



**REPORT AND RECOMMENDATION**


Plaintiffs Andre and Kathleen St. Laurent assert claims in this action based upon alleged design defects in a rock crushing machine and an alleged failure to warn. During discovery, Plaintiffs disclosed John A. Wilson, Ph.D., as an expert witness. Defendant Metso Minerals Industries, Inc. ("Metso") moves for an order excluding Dr. Wilson's proffered opinion testimony regarding warnings and alternative design (document no. 32). The Plaintiffs filed an objection.

Metso presents two grounds in support of its motion. First, Metso argues that Dr. Wilson's report violates Federal Rule of Civil Procedure 26(a)(2)(B) by failing to disclose the data and information that Dr. Wilson considered in reaching his opinions. Second, Metso argues that Dr. Wilson's proffered testimony fails

to satisfy the criteria for admission under Federal Rule of Evidence 702. The Court considers these two arguments after briefly stating the pertinent background facts.[1]

## Background

This action arises out of a workplace accident that occurred on March 20, 2002, during Mr. St. Laurent's employment with Pike Industries, Inc. ("Pike"). Mr. St. Laurent inserted a metal pry bar into the crushing cavity of a Nordberg LT 105 rock crushing machine while attempting to clear a material jam. The machine was running at the time. One of the machine's moving parts forced the pry bar back towards Mr. St. Laurent striking him on

---

[1]The Court notes that Metso neither asserts that Plaintiffs' expert disclosure was untimely, nor does it challenge Dr. Wilson's qualifications to serve as an expert witness in this case. See Pls.' Objection at 8 and Pls.' Ex. 5 (Wilson Dep. at 5:10-13) (commenting on Dr. Wilson's credentials). In the curriculum vitae attached to his report, Dr. Wilson indicates that he has a B.S., M.S. and Ph.D. in mechanical engineering. See Pls.' Ex. 3. Dr. Wilson has been employed in various capacities in the Mechanical Engineering Department at the University of New Hampshire since 1964. Id. Dr. Wilson has also worked as an engineer, and has had numerous consulting assignments for industry, government, and in relation to litigation. Id. Dr. Wilson testified at his deposition that he has prior experience rendering expert opinions on several "rock crusher cases," and has previously provided expert testimony on the adequacy of warnings on large equipment. Pls.' Ex. 5 (Wilson Dep. at 37:16-18, 45:6-12). The Court finds Dr. Wilson qualified to render an expert opinion in this case.

2

the side of his head resulting in serious injuries.

Defendant Whitney & Son, Inc. ("Whitney") is a distributor of Metso's Nordberg products, and leased the machine at issue to Pike. <u>See</u> Metso's Ex. D (Baker Dep. at 20:1-21:20). Mr. St. Laurent testified that prior to his accident, he had raised concerns regarding the use of a metal pry bar to free jammed rock from the crusher to a Whitney employee. Pls.' Ex. 4 (St. Laurent Dep. at 115:17-116:13). Mr. St. Laurent further testified, however, that he followed the training and instruction of the Whitney employee in using the metal pry bar in the manner that he did. Pls.' Ex. 4 (St. Laurent Dep. at 117:2-14).

In his written report, Dr. Wilson noted that "[t]he practice of using a crowbar to free or reposition rocks while the crusher is running violates many of the safety and operating procedures" in the machine's instruction manual. Pls.' Ex. 3 (Wilson Report at 2). Dr. Wilson further observed that "[t]he manual specifically states, 'Never use a crowbar.'" <u>Id.</u> Dr. Wilson noted, however, that "there are no posted warning labels of a similar nature on the actual machine." <u>Id.</u> Dr. Wilson opined that the machine at issue should have had a visual warning "to provide users with . . . guidance regarding proper and improper

3

procedures." Pls.' Ex. 3 (Wilson Report at 3); see also Pls.' Ex. 5 (Wilson Dep. at 128:9-22, 135:19-23, 140:9-21) (discussing Dr. Wilson's opinion regarding a machine-posted warning).

Dr. Wilson further observed in his report that:

> There is an electric eye system which detects the level of rock within the crusher jaw cavity and temporarily stops the feed conveyor when the jaw cavity is too full. A similar electric eye system could have been employed to ensure that the crusher would not run if the cover was not properly in place over the top of the jaws. This would prevent the use of crowbars or other such implements being used in an active crusher as inserting a crowbar to move a stuck rock would be much more difficult and most likely totally ineffective with the cover closed.

Pls.' Ex. 3 (Wilson Report at 2). Dr. Wilson opined that the machine should have had "some kind of crusher cover sensor system," which "would have prevented the use of a crowbar while the movable crusher jaw was active and would have prevented the accident." Id.; see also Pls.' Ex. 5 (Wilson Dep. at 167:2-173:14) (discussing Dr. Wilson's reference to an electric-eye system on the crusher).

## Discussion

I. Disclosure of Data or Information Considered By Expert

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party shall disclose to other parties the identity of any person

who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(A). Federal Rule of Civil Procedure 26(a)(2)(B) requires that the disclosure of a witness who has been retained to provide expert testimony be accompanied by a written report that contains, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor" and "the data or other information considered by the witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B). Metso argues that Dr. Wilson's report fails to disclose the data or other information that he considered in forming his opinions and is therefore subject to exclusion under Federal Rule of Civil Procedure 37(c)(1).[2] See Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004) (finding that the adoption of Fed. R. Civ. P. 37(c)(1) made the directives of Fed. R. Civ. P. 26(a)(2)(A)-(B) mandatory); see also Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) (finding that Fed. R. Civ. P. 37(c)(1) "clearly

---

[2]Rule 37(c)(1) provides in relevant part that: "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

5

contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches" of the rule).

Plaintiffs respond that Dr. Wilson's written report complies with the requirements of Rule 26(a)(2)(B) because it presents "a detailed account of the operation and function of the Nordberg machine based upon his personal inspection." Pls.' Objection at 5. Additionally, Plaintiffs assert that Dr. Wilson referenced his analysis of the Nordberg instructional manual including pertinent safety instructions and posted warning labels in his report. Id.; see also Pls.' Ex. 3 (Wilson Report at 2-3). In further support of their argument, Plaintiffs attached pages from the transcript of Dr. Wilson's October 27, 2004 deposition wherein Dr. Wilson testified that his report was based on the instructions and warning manuals that accompanied the Nordberg machine and his February 14, 2003 inspection of the machine at issue. See Pls.' Ex. 5 (Wilson Dep. at 48-49).

While Dr. Wilson's report could have stated more clearly the data and information upon which he relied, the Court finds that the report meets the requirements of Rule 26(a)(2)(B). Therefore, the Court finds that the exclusion of Dr. Wilson's opinion testimony under Rule 37(c)(1) is not warranted.

6

II.  Whether Dr. Wilson's Proffered Testimony Meets the
     Requirements of Fed. R. Evid. 702

As additional grounds for excluding Dr. Wilson's proffered testimony, Metso argues that Dr. Wilson's testimony fails to satisfy the criteria for admission under Federal Rule of Evidence 702.  The rule provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Metso argues that Dr. Wilson's testimony was not based upon sufficient facts and data, and that his opinions are not the product of reliable principles and methods.  Therefore, Metso argues, the Dr. Wilson's proffered testimony must be excluded under Rule 702.  The Court considers Metso's arguments under Rule 702 next.

A.   Whether the Daubert Factors Apply

In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993), the Supreme Court held that the Federal Rules of Evidence, "assign to the trial judge the task of ensuring that an

7

expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  The Daubert Court identified four factors that trial courts might find useful in determining the reliability of scientific expert testimony: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the technique's operation; and (4) whether the theory or technique has been generally accepted in the relevant scientific community.  509 U.S. at 593-594.  The inquiry under Rule 702 is flexible.  Id. at 594.  The factors identified in Daubert were not intended to be used as a definitive checklist or test.  Id. at 593.

Plaintiffs argue that Dr. Wilson's extensive education and training as a university professor, mechanical engineer and an engineering consultant over a period of thirty years demonstrates that he has specialized knowledge in the field of engineering. Citing the Supreme Court's statement in Daubert that its discussion "was limited to the scientific context," see 509 U.S. at 590 n.8, Plaintiffs argue that Dr. Wilson's specialized knowledge as a thirty year career engineer and consultant alone

satisfies the criteria of Rule 702.  See Pls.' Objection at 9.

Plaintiffs' argument was considered and rejected in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).  Kumho Tire was a case that focused on the admissibility of testimony by a tire failure analyst with a master's degree in mechanical engineering, ten years experience at a tire manufacturer and experience testifying as a tire failure consultant in other tort cases.  Id. at 153.  In its decision, the Supreme Court found that the language of Rule 702 "makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge."  526 U.S. at 147.  Rather, "the Rule applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope."  Id.  The Court noted that Daubert referred only to "scientific" testimony because that was the nature of the expertise at issue in the case.  Id.

The Kumho Tire Court found that where expert testimony is challenged under Rule 702, and "such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"  Id. at 149.  The

9

trial court may consider one or more of the factors identified in Daubert in making this determination "where they are reasonable measures of the reliability of expert testimony." Id. at 152. The list of Daubert factors, however, "neither necessarily nor exclusively applies to all experts or in every case." Id. at 141. The trial court has "the same kind of latitude in deciding how to test an expert's reliability . . . as it enjoys when it decides whether or not that expert's relevant testimony is reliable." Id. at 152 (emphasis in original).

In its motion to exclude, Metso argues that Dr. Wilson's opinions regarding warnings that allegedly should have been provided are unreliable because they are divorced from scientific methodology. Metso similarly argues that Dr. Wilson's alternative design opinions are unreliable because they are not grounded in scientific methodology and amount to no more than an undeveloped concept. The Court finds that Metso has sufficiently called the reliability of Dr. Wilson's opinions into question to require the Court to apply a Daubert-type reliability inquiry to determine whether Dr. Wilson's proffered expert testimony satisfies the requirements for admissibility under Rule 702. Dr. Wilson's qualifications to render an expert opinion, by itself,

10

does not meet the requirements of the rule. See Bourelle v. Crown Equip. Corp., 220 F.3d 532, 537 n.11 (7th Cir. 2000). The Court considers whether Dr. Wilson's opinions are based on sufficient facts and data, and are the product of reliable principles and methods next.

B.   Reliability Inquiry

Although the Court has not found any First Circuit decision that is directly on point, numerous other federal appellate courts have considered the admissibility of expert testimony under Federal Rule of Evidence 702 in alternative design and failure to warn cases. In Watkins v. Telsmith, Inc., 121 F.3d 984, 985 (5th Cir. 1997), the plaintiff alleged that a portable conveyor that fell on the decedent had an unreasonably dangerous design. Plaintiff's theory was that the use of only one wire rope to support the conveyor arm made the product unreasonably dangerous. Id. at 986. Plaintiff's expert opined that alternative designs were feasible. Id. The district court excluded the testimony of the proffered witness because the testimony "lacked the requisite indicia of reliability to derive from 'scientific, technical, or other specialized knowledge.'" Id. at 992.

11

The Fifth Circuit noted three specific deficiencies in the proffered testimony. Id. "First, the proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." Id. The court noted in this regard that testing of the proposed design, while not a necessity in every case, is important. Id. The proffered witness in Watkins had not performed any testing of his proposed alternatives. Second, the witness did not investigate designs of other conveyors then on the market or available in the same year as the conveyor at issue. Id. Third, the witness "did not even make any drawings, or perform any calculations that would allow a trier of fact to infer that his theory that the conveyor design was defective and that alternative designs would have prevented the accident without sacrificing utility were supported by valid engineering principles." Id. The Fifth Circuit held that the district court did not err in concluding that the witness' proffered testimony was unreliable because he "made his assessment of unreasonable dangerousness and proposed his alternative designs 'without . . . any scientific approach to the proposition at all.'" Id. at 992-993.

In Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1078 (8th

12

Cir. 1999), the plaintiff alleged that design and warning defects associated with a corn harvesting machine proximately caused severe injuries to his legs, which resulted in the plaintiff having his legs amputated. The plaintiff proffered an expert who opined that the machine should have been equipped with "larger and more prominent warnings," and that the machine should have incorporated "awareness barriers." Id. at 1080. The plaintiff also proffered a second expert who was prepared to testify that machine was defective "because the original warning signs were too small, too far from the point of danger, and oriented at an angle which made them difficult to read." Id.

The Eighth Circuit found that the district court was correct in excluding the proffered testimony of plaintiff's witnesses because the first witness had neither constructed, drawn, or tested his proposed alternative device, nor had he shown that any other manufacturer incorporated his proposed device into the corn harvesting machine at issue or any other similar farm machinery. Id. at 1084. The court found that the expert's opinion was based merely on speculation. Id. The court further found that although both of plaintiff's experts opined that the warnings on the corn harvesting machine were deficient, neither witness had

13

created, designed or tested a warning device that would be more effective, or suggested other manufacturers of farm machinery who were using similar warnings. Id.

In Bourelle v. Crown Equip. Corp., 220 F.3d 532, 533 (7th Cir. 2000), the plaintiffs alleged that they were injured at work by the defendant's improperly designed forklift. They further alleged that the defendant failed to provide adequate operational warnings for the forklift. Id. In support of their claims, the plaintiffs proposed to offer a mechanical engineer with experience investigating lift truck accidents as an expert witness. Id. at 534. The district court found that expert's proposed testimony was unreliable under Rule 702 because it was not supported by sufficient scientific evidence. Id. at 535. The Seventh Circuit affirmed. Id. at 539.

The court noted that "the plaintiffs' expert surmised and claimed that an alternative design should have been implemented for the [forklift], and if it had, neither of the plaintiffs would have been injured." Id. at 536. The expert admitted when questioned by defendant's counsel, however, "that he had not done any scientific testing to support his alternative design theory." Id. The expert further admitted that he had not prepared any

14

"detailed design or calculations," performed "an economic feasibility study," prepared "preliminary drawings," or preformed "any risk utility type testing." Id. at 537. After recognizing the importance of testing in alternative design cases, the Seventh Circuit found that the district court did not abuse its discretion in concluding that the expert's opinions were nothing more than unreliable speculation. Id. at 538; see also Clark v. Takata Corp., 192 F.3d 750, 759 (7th Cir. 1999) ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact.").

With regard to the expert's opinion regarding an alleged failure to warn, the court held that the same reliability requirements apply to suggested warnings that apply to suggested alternative designs. Id. at 538 (citing Cummins v. Lyle Indus., 93 F.3d 362, 367 (7th Cir. 1996)). The court noted that the expert failed to draft or test an alternative warning for use with the machine at issue in the case. Id. The court found that the experts "failure to even draft a proposed alternative warning for the TSP's operation manual renders his opinion regarding the alleged inadequacy of Crown's existing warning concerning the risk of pallets entering the TSP operator's compartment to be

15

unreliable." Id. at 539 (citing Jaurequi, 173 F.3d at 1084).
The court further found that "[t]he fact that [the proffered expert] never even drafted a proposed warning renders his opinion akin to 'talking off the cuff' and not acceptable methodology." Bourelle, 220 F.3d at 539.

The Seventh Circuit again affirmed a district court's exclusion of proposed expert testimony in an alternative design case based on the expert's failure to engage in any type of testing in Dhillon v. Crown Controls Corp., 269 F.3d 865 (7th Cir. 2001). The Dhillon Court noted that:

> We could identify a number of problems with the testimony these witnesses were prepared to offer, but the most glaring among them is the lack of testing, or more generally the failure to take any steps that would show professional rigor in the assessment of the alternative designs (or, as the amended rule puts it, that the testimony is "the product of reliable principles and methods").

Id. at 869.

In Zaremba v. General Motors Corp., 360 F.3d 355, 360 (2d Cir. 2004), the Second Circuit affirmed a district court's decision to exclude proffered expert testimony where the plaintiff's expert proposed to testify concerning a safer alternative design for a car involved in a one-car rollover accident. The district court found that the plaintiffs had not

16

met their burden under Federal Rule of Evidence 702 because their proposed expert witness, an engineer, had not done any of the following: (1) examined or tested the car involved in the accident; (2) offered any measurements or calculations to support his theory of how the accident happened; (3) made a drawing or model of his hypothetical alternative design; (4) conducted any tests of his design; (5) offered calculations in support of the safety of his design; (6) subjected his alternative design to peer review and evaluation; (7) presented any evidence that other designers or manufacturers in the relevant design community accepted the untested propositions underlying his opinions. Id. at 357.

In affirming the district court's decision, the Second Circuit noted that the plaintiffs had not satisfied any of the four factors identified in Daubert with regard to the proffered expert's testimony about a safer alterative design. Id. at 358. The court went on to state that:

> It is not enough for Phillips to testify reliably that his hypothetical alternative design would, in some respects, have better performance than the Trans Am involved in the accident; to provide relevant testimony, Phillips must also establish that his hypothetical design would have resulted in greater safety in the rollover accident at issue. Though he is apparently willing to testify to this, Daubert and Rule

17

702 require that this testimony be reliable. In the absence of drawings, models, calculations, or tests, it was not manifest error for the District Court to find that Phillips's testimony was insufficiently reliable.

Id. at 359.

Notwithstanding the holdings in the foregoing cases, Plaintiffs argue that the majority of courts do not require an expert to either draft a proposed warning or to create and test a prototype alternative design in order to find the expert's testimony admissible. The authorities that Plaintiffs rely upon for support, however, have no persuasive force. To the extent that it is applicable here, the decision in United States v. Sinclair, 74 F.3d 753, 757 (7th Cir. 1996), has been superceded by the Seventh Circuit's decisions in Bourelle and Dhillon, discussed supra. Likewise, the decision in Belec v. Hayssen Mfg. Co., 105 F.3d 406 (8th Cir. 1997), was not followed by the Eight Circuit when it decided Jaurequi, also discussed supra. And, the Ninth Circuit has expressly acknowledged that its decision in McKendall v. Crown Control Corp., 122 F.3d 803 (9th Cir. 1997), has been overruled. See United States v. Hankey, 203 F.3d 1160 (9th Cir. 2000); White v. Ford Motor Co., 312 F.3d 998, 1007 (9th Cir. 2002).

The Court finds that Dr. Wilson's proffered testimony in the

18

instant case is beset by many of the same problems that led to the exclusion of expert testimony in <u>Watkins</u>, <u>Jaurequi</u>, <u>Bourelle</u>, <u>Dhillon</u> and <u>Zaremba</u>. There is no evidence that Dr. Wilson's proffered testimony meets any of the <u>Daubert</u> factors (testing, peer review, potential error rate or standards, and general acceptance). Significantly, Dr. Wilson did not create any prototypes of his alternative design, or do any testing to support his alternative design theory, which is perhaps the most <u>Daubert</u> important factor. <u>See</u> <u>Daubert</u>, 509 U.S. at 593 ("a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested."); <u>see also</u> <u>Cummins</u>, 93 F.3d at 368 (discussing the importance of testing in alternative design cases); <u>Watkins</u>, 121 F.3d at 985 (same). Nor did Dr. Wilson rely upon any engineering drawings or sketches, industry standards, or peer review. And while Dr. Wilson testified that he has previously had rock crusher cases, he did not cite any evidence that any other manufacturer had incorporated his suggested alternative design. Similarly, Dr. Wilson did not draft or test any proposed warnings for the Nordberg machine or demonstrate any other indicia of reliability.

19

The Court is cognizant that the reliability inquiry under Rule 702 is flexible. See Kumho Tire, 526 U.S. at 141. Still, the Supreme Court has cautioned that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). The trial court must ensure that the expert's testimony, whether it is based upon professional studies or personal experience, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. In this case, the Court can neither find that Dr. Wilson's opinions are based upon sufficient facts and data, nor that those opinions are the product of reliable principles and methods as required under Federal Rule of Evidence 702.

The Plaintiffs assert that "Dr. Wilson applied sound engineering principles and methods in deriving his opinions." Pls.' Objection at 8. However, there are no stated principles or methodology referenced either in Dr. Wilson's report or in the Plaintiffs' memorandum of law. Plaintiffs' failure to demonstrate that Dr. Wilson's proffered testimony satisfies

either the <u>Daubert</u> factors, or any other set of reasonable reliability criteria, supports a finding that the requirements of Rule 702 have not been satisfied.  <u>See</u> <u>Kumho Tire</u>, 526 U.S. at 158.  Therefore, the Court finds that the portion of Dr. Wilson's testimony that provides opinions on warnings and an alternative design for the machine at issue should be excluded.

### Conclusion

For the reasons set forth above, the Court recommends that Metso's Motion to Exclude Certain Testimony of Plaintiffs' Expert John A. Wilson, Ph.D. (document no. 32) be granted.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: September 13, 2005

cc:  Christopher J. Poulin, Esq.
     James P. Bassett, Esq.

21

Raymond D. Jamieson, Esq.
Thomas N. Harrington, Esq.
Lawrence S. Smith, Esq.
Todd J. Hathaway, Esq.